UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                        )
                                              )
    ROWE FURNITURE, INC.              )    Case No. 06-11143-SSM
                                              )    Chapter 7
             Debtor       )

**MEMORANDUM OPINION**

Before the court is the motion of Tietex International Ltd. ("Tietex") to allow two overlapping proofs of claim it filed after the claims bar date.[1] Tietex was a supplier to the debtor, Rowe Furniture, Inc. After the debtor and its parent holding company, The Rowe Companies ("TRC"), filed chapter 11 petitions on the same day, Tietex filed timely proofs of claim in the TRC case but not in this case. This case was later converted to chapter 7, and TRC successfully objected to the Tietex claims as having been filed in the wrong case. By then, the claims bar date in this case had passed. Tietex refiled its claims in this case and has brought this motion to have them allowed as amendments to the timely-filed claims in the TRC case, or, in the alternative, treated as "deemed filed." The chapter 7 trustee opposes the motion and asks that the claims be disallowed as untimely. For the reasons stated, Tietex's motion will be denied, but without prejudice to payment of its administrative claim.

---

[1] Claim No. 178 is a general unsecured claim in the amount of $202,246.50 for goods delivered to the debtor. Claim No. 179 is an administrative claim for $63,604.00 for goods delivered within 20 days of the chapter 11 filing. The amounts set forth in Claim No. 179 are <u>included</u> within Claim No. 178, and Tietex acknowledges that the maximum amount of the two claims taken together is $202,246.50.

1

Background

The debtor was a furniture manufacturer with plants in Elliston, Virginia; Salem, Virginia; Poplar Bluff, Missouri; and Morehouse, Missouri.  Together with TRC and an affiliate, Storehouse, Inc. ("Storehouse"), the debtor filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code in this court on September 18, 2006.[2]  The same law firm represented all three debtors as debtors in possession.  Although an initial effort was made to reorganize the debtor, a decision was ultimately made to sell its assets.  Following the sale, the debtor's case was converted to chapter 7 on February 21, 2007, and Donald F. King was appointed as trustee.  Although the assets of TRC and Storehouse have also been sold, those companies remain in chapter 11.[3]

The debtor came into existence as an operating company in 1999, when the former Rowe Furniture Corporation, after purchasing Storehouse, became a holding company (changing its name in the process to The Rowe Companies) and transferred its manufacturing operations to the debtor.  When the chapter 11 cases were filed, TRC's petition listed Rowe Furniture Corporation as a name it had used in the last eight years, and the docket sheet showed Rowe Furniture Corporation as a "dba" for The Rowe Companies.  The first-day motions filed in all three cases included a motion for joint administration.  Although the motion was ultimately denied, the notice of first-day motions simply referred to "The Rowe Companies, Inc., et al." and contained

---

[2] TRC was filed as Case No. 06-11142-SSM and Storehouse as Case No. 06-11144-SSM.

[3] A plan was confirmed in the TRC case on October 29, 2007.  No plan has been confirmed in the Storehouse case.

the (premature) designation "jointly administered." However, separate notices of the claims bar date, referring only to the specific debtor, were sent out for each case.

Prior to the filing of the chapter 11 petition, Tietex International, Ltd. ("Tiextex") had shipped a number of orders of upholstery fabric to the debtor's Elliston, Virginia, and Poplar Bluff, Missouri, plants. Tietex was listed on the debtor's schedules as the holder of an undisputed, liquidated, non-contingent unsecured claim in the amount of $225,144.24. After the chapter 11 petition was filed, Tietex sent a reclamation demand to TRC on September 26, 2006. Tietex filed a timely administrative claim against TRC on January 24, 2007, in the amount of $63,604.00, for the goods shipped within 20 days of the chapter 11 filing. Tietex also filed a timely unsecured claim in the TRC case on February 5, 2007, in the amount of $202,246.54, for all the goods sold between July 19, 2006 and September 12, 2006, including those for which administrative expense priority was claimed. Attached to the proofs of claim are invoices for each of the shipments showing the purchaser as "Rowe Companies, The."

The original bar date for filing claims in this case was February 6, 2007. As a result of the debtor's conversion to chapter 7, a new claims bar date of September 19, 2007 was set.[4] On the last day for filing claims in the debtor's case, TRC objected to Tietex's claims in its case. The objection was ultimately sustained on the ground that TRC was not liable for payment of the

---

[4] The conversion of a case from chapter 11 to chapter 7 gives rise to a new time period for filing claims. Fed.R.Bankr.P. 1019(2). The notice of the meeting of creditors in the chapter 7 case did not set a bar date for filing claims and stated, "Please Do Not File a Proof of Claim Unless You Receive a Notice to Do So." However, on June 21, 2007, the clerk, at the trustee's request, notified creditors of the need to file a proof of claim within 90 days of the date of the notice.

3

goods shipped to its subsidiary.[5]  In the interim, Tietex filed the same proofs of claim in this case on November 13, 2007.  The trustee has not yet filed a final report or commenced distributions to creditors.

## Discussion

Tiextex asserts that its proofs of claim, although filed after the claims bar date, should nevertheless be allowed as amendments either to the timely-filed claims in the TRC case or to the "deemed filed" claim in this case.

### I.

A creditor must file a proof of claim in order to receive distributions in a chapter 7 case. § 501(a), Bankruptcy Code; Fed.R.Bankr.P. 3002(a).  The general bar date for filing claims in a chapter 7 case is 90 days after the first date set for the meeting of creditors, unless creditors were initially given notice of insufficient assets to pay a dividend, in which event the bar date is 90 days after the mailing of a notice by the clerk that payment of a dividend appears possible. Fed.R.Bankr.P. 3002(c)(5).  A claim not filed by the claims bar date is subject to disallowance on that basis, *see* § 502(b)(9), Bankruptcy Code, but may nevertheless be paid under certain circumstances.[6]

---

[5] *See In re The Rowe Companies*, No. 06-11142-SSM, 2007 WL 4418143 (Bankr. E.D. Va., December 14, 2007).

[6]  Specifically, a tardily-filed priority claim is entitled to be paid with other priority claims as long as it was filed before the trustee begins final distribution.  § 726(a)(1), Bankruptcy Code. Additionally, a tardily-filed unsecured claim will be paid with other unsecured claims if the creditor did not have notice or actual knowledge of the case in time for filing a timely claim and the claim is filed in time to permit its payment.  § 726(a)(2)(C), Bankruptcy Code.  Finally, any other tardily-filed unsecured claim will be paid to the extent funds are available after the payment of all timely-filed unsecured claims and ahead of claims for fines, penalties, and punitive damages.  § 726(a)(4), Bankruptcy Code.

A.

Because the claims at issue were filed after the claims bar date, they are subject to disallowance unless, as Tietex argues, they are allowed as amendments to a timely-filed "informal" claim. In this connection, bankruptcy courts have long exercised their equitable powers to allow creditors who have filed some other pleading in the case within the claims bar date that clearly sets forth the creditor's claim, to have such pleading treated as an "informal" proof of claim that can be "amended," after the bar date, by filing a formal proof of claim. *Fyne v. Atlas Supply Co.*, 245 F.2d 107 (4th Cir. 1957); *Dabney v. Addison*, 65 B.R. 348 (E.D. Va. 1985); *see also, Davis v. Columbia Constr. Co. (In re Davis)*, 936 F.2d 771, 775-76 (4th Cir. 1991) ("For an amended claim to be allowed in the absence of a prior written informal claim, the creditor in question must undertake some affirmative action to constitute sufficient notice that he has a claim against the estate."). *Dabney* sets forth a list of representative, but not exhaustive, activities of the creditor that would be considered sufficient notice of the creditor's claim against the estate. These include sending bills to a trustee demanding to be paid; filing an objection to a trustee's motion to sell property containing evidence of the creditor's security interest in the property to be sold; attending and being an active party at the meeting of creditors; and exchanging letters with the trustee seeking payment from the estate. *Dabney*, 65 B.R. at 351. However, *Dabney* cautioned that notice of the creditor's claim would not be found merely by proving knowledge on the part of the trustee of the asserted claim or a mere listing of the claim by the debtor in its schedules. *Id.* Rather, the essence of being able to find an informal proof of claim is some evidence that the creditor has made a demand in the case which "manifests the creditor's intention to hold the debtor liable." *In re A.H. Robins Company, Inc.*, 118 B.R. 436,

439 (Bankr. E.D. Va. 1990) (*quoting In re Middle Plantation of Williamsburg, Inc.*, 48 B.R. 789, 795 (E. D. Va. 1985)).

Tietex argues that by filing timely proofs of claim in the case of the debtor's holding company and by sending a reclamation demand to TRC at a time when both TRC and the debtor were represented by the same attorneys, it has taken "affirmative action to constitute sufficient notice . . . [of] a claim against the estate" within the teaching of *Davis*. The court cannot agree.[7] In *Davis*, as in the other "informal claim" cases decided by the Fourth Circuit, the pleadings or actions recognized as an informal claim were nevertheless filed or undertaken in the debtor's own case, not some other case. *See, also, In re Honda*, 106 B.R. 204 (Bankr. D. Hawaii 1989) (lift stay motion filed in corporate debtor's case could not be considered informal proof of claim in guarantor's individual case); *Mann v. CCR Financial Planning, Ltd (In re McKoy)*, 211 B.R. 843 (E.D. Va. 1997) (dischargeability complaint erroneously filed in case of debtor's wholly-owned corporation could not be amended, after dischargeability bar date had passed, to show that it was filed in the individual debtor's case); *H. T. Paul Co. v. Atteberry (In re Atteberry)*, 194 B.R. 521 (D. Kan. 1996) (motion for extension of time filed in debtor's chapter 11 case did not extend dischargeability deadline in same debtor's separate chapter 7 case).

---

[7] The court has previously addressed this issue in connection with a motion by a different creditor seeking the same relief that Tietex seeks. *In re Rowe Furniture, Inc.*, – B.R. –, 2008 WL 619299 (Bankr. E.D. Va., March 4, 2008). That creditor, like Tietex, had initially filed its claims in the TRC case and then refiled them in this case after the claims bar date. However, because that creditor, unlike Tietex, had filed a pleading *in this case* identifying itself as a creditor, its late-filed proofs of claim were allowed amendments of an informal claim.

B.

The only cases the court is aware of in which a claim filed in an entirely separate proceeding was treated as an informal claim are *In re Interco, Inc.*, 149 B.R. 934 (Bankr. E.D. Mo. 1993) and *In re Meyer & Son Seafood Corp.*, 188 B.R. 315 (Bankr. S.D. Fla. 1995). In *Interco*, the debtor and some 30 related companies, including Sky City Stores, Inc. ("Sky City") filed chapter 11 cases on the same date. An order for joint administration was entered, and a joint plan was ultimately confirmed. 149 B.R. at 935. Three landlords had filed timely proofs of claim in the Sky City case for rejection damages. Attached to each of the claims was a copy of a lease guarantee that Interco had executed. 149 B.R. at 938-39. Only after the claims bar date had passed did the landlords file proofs of claim in Interco's case based on the guarantees. The court, after first noting the Eighth Circuit's liberal policy in favor of claims amendments, held that the copies of the Interco guarantees attached to the proofs of claim filed in the Sky City case "disclose the existence of claims against Interco." 149 B.R. at 939. After further observing that Sky City and Interco were represented by legal counsel from one law firm, and that the cases had been jointly administered, the court concluded that "under these circumstances, the copies of the guarantees submitted by [the landlords] adequately evidence an intention by the claimant[s] to share in [Interco's] assets." 149 B.R. at 939 (internal quotation marks omitted).

In *Meyer & Son*, the debtor had filed in state court a voluntary assignment for the benefit of creditors. 188 B.R. at 316. Shortly thereafter, an involuntary chapter 7 bankruptcy petition was filed against the debtor in federal bankruptcy court. The creditor filed its proof of claim with the state court, but not in the bankruptcy court. *Id.* The bankruptcy case was converted to chapter 11, then back to chapter 7. Prior to the bar date for claims in the bankruptcy case, the

state court assignee turned over to the chapter 7 trustee copies of all the claims filed with the state court. 188 B.R. at 317 n.10. Because of an inaccurate mailing matrix, the creditor never received formal notice of the commencement or conversion of the bankruptcy case. 188 B.R. at 316-17. Under those facts, the bankruptcy court held that the delivery of the state court claim to the chapter 7 trustee – prior to the claim bar date in the bankruptcy case – qualified as an "informal" proof of claim, and the court allowed the claim. 188 B.R. at 320.

Both *Interco* and *Meyer & Son* can be readily distinguished from the present case. In *Interco*, no trustee had been appointed; the cases were jointly administered; and both debtors were represented by the same law firm. Under those circumstances, it was not unreasonable to impute to Interco, as the representative of its chapter 11 estate, knowledge of the claims filed in Sky City's case. In the present case, by contrast, there is no order of joint administration, and the representatives of the two estates are different. TRC is the representative of its own estate, while the chapter 7 trustee, Donald F. King, is the representative of the debtor's case. In *Meyer & Son*, the bankruptcy case was not only, as a practical matter, a continuation of the state court assignment for the benefit of creditors, but the assignee had actually delivered the claim to the chapter 7 trustee prior to the claims bar date. By contrast, the debtor's case cannot fairly be characterized as simply a continuation of TRC's case, and there is no evidence that the Tietex claim was made known to the chapter 7 trustee (other than by being listed on the debtor's schedules) prior to the claims bar date in this case.

II.

Although the mere listing of a claim on the debtor's schedules is insufficient to create an informal proof of claim, *Dabney*, 65 B.R. at 351, *Davis*, 936 F.2d at 776, Tietex argues that a

different result should follow in this case because its claim was "deemed filed" prior to the conversion of this case from chapter 11 to chapter 7.  In a chapter 11 case, a claim that is listed on the debtor's schedules is "deemed filed"—and the creditor is not required to file a proof of claim—so long as the claim is not scheduled as disputed, contingent, or unliquidated.  § 1111(a), Bankruptcy Code; Fed.R.Bankr.P. 3003(b)(1).  If a creditor files a proof of claim in a chapter 11 case, and the case converts to chapter 7, the claim is deemed filed in the chapter 7 case.  Fed. R. Bankr. P. 1019(3).  This only applies, however, to claims actually filed in the chapter 11 case, not to claims that are merely scheduled.  *See* Advisory Committee Notes to the 1987 Amendments to the Federal Rules of Bankruptcy Procedure (explaining that then-Rule 1019(4) was amended so that "only claims that are actually filed in the chapter 11 case are treated as filed in the superseding chapter 7 case.")  The reason for this limitation, according to the Advisory Committee, is that "[w]hen chapter 11 cases are converted to chapter 7 cases, difficulties in obtaining and verifying the debtors' records are common" and that "[i]t is unfair to the chapter 7 trustee and creditors to require that they be bound by schedules which may not be subject to verification."  Given this clear policy, it would be inappropriate to allow the mere scheduling of a claim in the chapter 11 case to remain dormant in the superceding chapter 7 case as an "informal" claim that could later mature into an allowable claim, notwithstanding the passing of the claims bar date, thereby eviscerating the carefully-crafted distribution scheme in § 726, Bankruptcy Code.

III.

Although denial of the present motion is fatal (unless the bankruptcy estate proves unexpectedly solvent) to payment of Tietex's unsecured claim, it has no practical effect on

Tietex's administrative claim under § 503(b)(9), Bankruptcy Code for goods delivered within 20 days before the filing of the chapter 11 petition. Allowed administrative expenses are entitled to a second-level priority. § 507(a)(2), Bankruptcy Code. In the chapter 7 scheme of distribution, tardily-filed priority claims rank with timely-filed priority claims and are paid before any distribution is made on general unsecured claims, so long as the tardily-filed claim is filed on or before the earlier of the date that is ten days after the mailing to creditors of a summary of the trustee's final report or the date on which the trustee commences final distribution to creditors. § 727(a)(1), Bankruptcy Code. This may be of limited solace to Tietex, since its administrative claim, even if allowed, represents only 31% of the total claim for goods shipped. On the other hand, there is far more likelihood that administrative claims will be paid in this case than there is of a significant distribution on general unsecured claims. In any event, regardless of the ultimate distributions made in this case, the circumstances cited by Tietex in support of the present motion at bottom amount to no more than excusable neglect. Although excusable neglect is a basis for extending the time to file a claim in a chapter 11 case,[8] it is not a basis for extending the time in a chapter 7 case. *See* Fed.R.Bankr.P. 9006(b)(2) (prohibiting enlargement of time set by Rule 3002(c) for filing proof of claim in chapter 7, 12, and 13 case).

## Conclusion

For the reasons stated, Tietex's actions in filing proofs of claim and sending a reclamation demand in the TRC case cannot be treated as an informal amendable proof of claim in this case, nor can the late claims be treated as amendments of the scheduled claim that was

---

[8] *See* Fed.R.Bankr.P. 3003(c)(3); *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

"deemed filed" while the case remained in chapter 11.  A separate order will therefore be entered denying the motion to treat the claims as timely filed, but without prejudice to the payment of the administrative claim, if not otherwise objected to.

Date: _____           _____
                                      Stephen S. Mitchell
Alexandria, Virginia                  United States Bankruptcy Judge


Copies to:

Lisa Sumner, Esquire
Poyner & Spruill LLP
301 South College Street, Suite 2300
Charlotte, NC   28202
Counsel for Tietex International, Ltd.

James W. Reynolds, Esquire
Odin, Feldman & Pittleman, P.C.
9302 Lee Highway, Suite 1100
Fairfax, VA   22031
Counsel for Donald F. King, chapter 7 trustee

Dylan G. Trache, Esquire
Wiley Rein LLP
7925 Jones Branch Drive, Suite 6200
McLean, VA   22102
Counsel for the debtor